IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PROSPECT DCMH LLC, dba, DELAWARE COUNTY MEMORIAL HOSPITAL,<br><br>Plaintiff,<br><br>v.<br><br>XAVIER BECERRA, Secretary, United States Department of Health and Human Services,<br><br>Defendant. | Case No.: |

**COMPLAINT FOR INJUNCTIVE AND MANDAMUS RELIEF**

Plaintiff Prospect DCMH LLC, dba, Delaware County Memorial Hospital ("DCMH") alleges as follows:

**INTRODUCTION**

1. Until very recently, DCMH was duly enrolled in the Medicare Program as a provider of inpatient and outpatient hospital services. However, by notice dated May 21, 2024 (Exhibit A) (which DCMH did not receive until May 29, 2024), Novitas Solutions ("Novitas"), a Medicare Administrative Contractor ("MAC"), unilaterally terminated DCMH's Medicare enrollment and Medicare provider agreement and deactivated its Medicare billing privileges **effective November 7, 2022.** Novitas did so because the Pennsylvania Department of Health ("State DOH") had notified Novitas that DCMH had purportedly "voluntarily" terminated its Medicare provider agreement and enrollment effective November 7, 2022. DCMH submitted a "rebuttal" to Novitas on June 4, 2024 (Exhibit B), challenging the validity of Novitas' decision. DCMH insisted that it had not voluntarily terminated its Medicare agreement/enrollment and had

7587860.3

not ceased providing services to hospital patients. On July 1, 2024, Novitas rejected DCMH's rebuttal (Exhibit C) and upheld its May 21, 2024 decision. According to a Medicare regulation, 42 C.F.R. § 424.546(f), there is no administrative appeal process available to challenge the denial of the rebuttal statement leaving DCMH nowhere to go for relief except to this Court.

2. Novitas' termination of DCMH's Medicare agreement and enrollment and deactivation of its Medicare billing privileges are unlawful and must be set aside, because:

    a. As a private contractor, Novitas lacks statutory authority to impose the sanctions at issue. And, the Secretary similarly lacks the required statutory authority to delegate such discretionary authority to a MAC, including Novitas;

    b. Novitas' retroactive application of the sanctions to November 7, 2022 violates the Medicare statute governing the effective date of such actions and constitutes an unlawful taking and denial of due process of the law under the Fifth Amendment; and

    c. Novitas failed to give DCMH adequate notice of, and access to, applicable administrative appeal rights assured by the Medicare statute, thus depriving DCMH of a meaningful opportunity to be heard at a meaningful time by a neutral and independent decision-maker. Novitas' failure also constitutes a denial of due process. Novitas' failure to assure a timely, fair and meaningful hearing process explains why Novitas erroneously concluded that DCMH **voluntarily terminated** its Medicare provider agreement and enrollment and **ceased** furnishing services to Medicare beneficiaries effective November 7, 2022.

## JURISDICTION AND VENUE

3. Under the controlling Medicare statute, 42 U.S.C. § 1395cc(b), DCMH was entitled to a meaningful administrative hearing process and judicial review. Novitas' actions and inactions have resulted in a denial of this process thus entitling DCMH to immediate judicial

review.  By presenting its "rebuttal" to Novitas on June 4, 2024, DCMH has effectively presented its "claim" to the Secretary.  And, therefore, to the extent any other or further administrative appeal processes exist under the Medicare Act, this Court may deem pursuit of such processes to be futile under the circumstances of this case.  The Court may also waive further compliance with such administrative appeal processes because the issues in dispute involve questions of law, including constitutional questions, which should be heard and decided immediately by this Court.  Additionally, because the issues in this matter raise important questions of federal law, jurisdiction is available under 28 U.S.C. § 1331.  And because Novitas has failed to follow the law, mandamus jurisdiction under 28 U.S.C. § 1361 is available to the extent necessary to compel the Secretary and Novitas to abide by the law.  Finally, jurisdiction is appropriate under the *Thunder Basin* test elucidated in the Supreme Court's decision in *Axon Ents. v. FTC*, 143 S. Ct. 890 (2023), because the constitutional and statutory challenges here are outside of the statutory review scheme in the congressional statutes applicable to Medicare and MACs and the issues here are outside the agency's expertise as HHS has no special expertise in the constitutional and statutory issues presented here.

4. Venue is appropriate in this Court because DCMH resides and does business within the Eastern District of Pennsylvania.

## THE PARTIES

5. DCMH  continues to be licensed as a hospital by State DOH.  It has provided healthcare services in Delaware County since 1950.

6. The Secretary administers the Medicare Program.  He does so on a daily basis through the Centers for Medicare & Medicaid Services ("CMS"), a government sub-agency.  CMS has, in turn, entered into contracts with private, non-government companies to administer

some aspects of the Medicare program.  Novitas is one such MAC and is located in King of Prussia, Pennsylvania.

## THE CONTROLLING MEDICARE PRINCIPLES

7. Medicare, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 et seq., is the federal healthcare program for the aged and disabled.  Part A of the program covers inpatient healthcare services furnished through institutional "providers," such as hospitals.  42 U.S.C. §§ 1395c – 1395i.  Part B of the Program is the Medicare supplementary medical insurance program, which covers among other services, hospital outpatient services.  42 U.S.C. §§ 1395j-u.  Both Part A and Part B services are implicated by Novitas' decisions in this case.

8. Congress has authorized the Secretary, through CMS, to contract with private entities, MACs, to administer particular functions.  42 U.S.C. §§ 1395kk-1(a)(4), 1395u(a) and 1395ddd.  The prescribed functions are payment functions and do not authorize the functions exercised by Novitas in this case.  In fact, in his Medicare appeal regulations, at 42 C.F.R. § 498.1(g), the Secretary lists Social Security Act Section 1866(j) as the authority for the hearing rights of a provider whose Medicare enrollment is denied and/or whose Medicare billing privileges are revoked.  Section 1866(j) is codified at 42 U.S.C. § 1395cc.  Subsections (b)(1)-(3) of Section 1395cc address the associated appeal procedures.  MACs are not referenced in this statute as having a role in this process.  Instead, the statute clearly places such responsibility on "the Secretary."  Similarly, in his regulation at 42 C.F.R. § 489.1(b), the Secretary also identifies this 42 U.S.C. § 1395cc as the basis for actions affecting Medicare provider agreements.  And, again neither the statute nor the regulation makes any reference to MACs.  However, the regulation does mention the role of CMS and State Agencies ("SA") in the process.

9. CMS is authorized by statute, 42 U.S.C. § 1395cc(b)(1) and regulation, 42 C.F.R.

§ 489.52(a)(1), to accept and implement a provider's choice to terminate its Medicare provider agreement after receiving notice of such a decision from the provider.  And, this same regulation, in Subsection (b)(3), indicates that "a cessation of business is deemed to be a termination by the provider, effective with the date on which it stopped providing services to the community."  The statute does not contain such a provision.  CMS is also authorized by statute and regulation to terminate a provider agreement under certain circumstances.  *See* 42 U.S.C. § 1395(b)(2) and 42 C.F.R. § 489.53(a).  Neither the statute nor the regulation makes any mention of the participation of a MAC in the termination process.

10. Under the controlling statute, 42 U.S.C. § 1395cc(b)(3), the effective date of the termination of a provider agreement is determined by the effective date of a Medicare exclusion under 42 U.S.C. § 1320a-7c.  Section 1320a-7c(1), in turn, allows an exclusion to take effect "at such time and upon such reasonable notice to the public and to the . . . entity" as specified in regulations.  The exclusion regulations do not permit the imposition of retroactive effective dates.

11. Deactivation of a provider's Medicare billing privileges is addressed at 42 C.F.R. § 424.540.  Under Subsection (a)(7) of this regulation, CMS may deactivate billing privileges if the provider "is voluntarily withdrawing from Medicare."  The only process for challenging a deactivation decision under the regulations is to submit a "rebuttal to CMS" under 42 C.F.R. § 424.546(a). Nothing is mentioned about a MAC in Section 424.540.  However, in Section 424.546(a), MACs are mentioned.  Specifically, a rebuttal is available if a provider "receives written notice from CMS or its contractor" that privileges are to be or have been deactivated.  The provider's rebuttal is to be reviewed by "CMS" not by the MAC.  Importantly, Subsection (f) of this same regulation indicates that the rebuttal decision regarding the deactivation of billing

privileges is not "an initial determination" under 42 C.F.R. § 498.3(b), which effectively precluded DCMH from accessing further administrative appeal steps and judicial review. However, 42 C.F.R. §§ 498.3(b)(8) and (17) expressly consider the termination of a provider agreement and/or termination of enrollment in Medicare to be an "initial determination" subject to additional appeal rights and judicial review. As indicated below, Novitas did not inform DCMH of these rights even though Novitas terminated DCMH's Medicare provider agreement and enrollment.

## THE FACTS

12. By letter dated September 21, 2022 (Exhibit D), DCMH notified State DOH of its proposed merger of DCMH with its sister hospital, Crozer Chester Medical Center ("CCMC"). If and when such a merger is approved and completed, all of DCMH's then-current locations, including its main campus in Drexel Hill, as well as its several outpatient locations, would then become "locations" of CCMC, the surviving merger entity. In this same letter, DCMH pointed out that there would be no changes with respect to outpatient services furnished at its Broomall and Haverford locations. Once the merger was approved and completed, there would be "a temporary pause" in certain operations at the Drexel Hill campus "while other operations will continue." CCMC would then commence a renovation project to convert the Drexel Hill campus into a behavioral health center after obtaining State DOH's approval to do so. While the behavioral health center was being renovated, the Drexel Hill campus would continue to provide a microbiology lab and a maternal fetal medicine center. In this same letter, DCMH indicated its belief that the merger of DCMH into CCMC would constitute "a change of ownership" ("CHOW") for Medicare purposes. DCMH further opined that DCMH's provider agreement "will be subsumed into and become part of the provider agreement of CCMC," after which the

"DCMH CCN" will be "retired."  By email dated October 7, 2022, an official within State DOH confirmed the "temporary pause" in services at the DCMH campus.  (Exhibit E).  However, once the reorganization plan became public, state court litigation ensued resulting in the issuance of a temporary injunction halting the implementation of DCMH's reorganization plan, which later was stayed by the state court.

13. On November 4, 2022 (Exhibit F), State DOH notified DCMH that effective November 7, 2022, State DOH was suspending emergency department services and imposing a ban on admissions at DCMH.  State DOH did so because it found deficiencies that pose a significant threat to the health and safety of patients at DCMH resulting from a "failure to provide diagnostic imaging coverage for the hospital, including the emergency department."  State DOH explained that the suspension and ban on admissions "will be in place until the Department determines that there is no longer a significant threat to the health or safety of patients."  DCMH disagreed with this assessment and filed an appeal with State DOH on December 1, 2022, and again in 2024 to challenge it.  The appeal remains active.  State DOH has conducted additional surveys resulting in the issuance of citations by State DOH and the submission of additional plans of corrections by DCMH.

14. On May 17, 2024, State DOH issued a letter and Order (Exhibit G) denying the request to merge DCMH into CCMC and the resulting CHOW and rejecting DCMH's recent Plan of Correction.  DCMH has also appealed this order.  In this same letter, State DOH informed DCMH that certain outpatient services could be "moved" to CCMC's license and that services at the Haverford location could likely be moved under CCMC's license.

15. On May 29, 2024, DCMH received a May 21, 2024 letter (Exhibit A) from Novitas indicating that its Medicare enrollment was being terminated and its Medicare billing

privileges were being deactivated effective November 7, 2022. Novitas concluded that this meant Medicare would not reimburse DCMH for any claims for dates of service on or after November 7, 2022. Novitas' stated reason for these decisions was that State DOH had notified it that DCMH was "voluntarily terminating" its Medicare provider agreement. Novitas informed DCMH only of its "rebuttal rights" under 42 C.F.R. § 424.545(b), which rebuttal had to be submitted within 15 days of May 21, 2024, the date of Novitas' letter. Novitas did not inform DCMH of any other appeal rights regarding the sanctions imposed. Thus, DCMH submitted only a rebuttal letter on June 4, 2024 (Exhibit B) to the sanctions imposed on May 21, 2024. The thrust of the June 4, 2024 rebuttal letter was that DCMH had neither "voluntarily" terminated its provider agreement nor ceased doing business.

16. By letter dated July 1, 2024 (Exhibit C), Novitas rejected the rebuttal challenges and informed DCMH that the retroactive deactivation of its Medicare billing privileges will remain in effect. The July 1, 2024 letter says nothing about the provider agreement or enrollment termination.

## STANDARD OF REVIEW

17. Under the Administrative Procedure Act, 5 U.S.C. § 706, a reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be (a) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law; (b) contrary to constitutional right, power, privilege or immunity; (c) in excess of statutory jurisdiction, authority, or limitations; (d) without observance of the procedure required by law; or (e) unsupported by substantial evidence.

## NOVITAS' DECISION IS UNLAWFUL AND MUST BE SET ASIDE

18. The Medicare statutes do not authorize Novitas to impose the sanctions/remedies

it imposed on DCMH on May 21, and upheld on July 1, 2024.  Novitas is a MAC, a private company, and not a governmental entity.  While Congress has expressly granted MACs the authority to perform certain activities, such as developing and applying Medicare Local Coverage Determinations, Congress has not granted MACs the authority to terminate a provider's Medicare agreement or enrollment or to deactivate a provider's Medicare billing privileges.  The controlling statute, 42 U.S.C. § 1395cc, only allows the Secretary, or his government delegate, CMS, to terminate Medicare enrollment and adversely affect a provider's billing privileges.  And, neither the Secretary nor CMS has the required express statutory authority to delegate such authority to a private entity, such as Novitas.  Absent such statutory authority Novitas' decision is *ultra vires* and must be set aside.

19. Novitas applied its May 21, 2024 decision terminating DCMH's Medicare provider agreement and enrollment and deactivating DCMH's Medicare billing privileges retroactively beginning November 7, 2022.  Neither Novitas nor the Secretary, himself, has the authority to impose the remedies at issue here on a retroactive basis.  Under the controlling statute, 42 U.S.C. §1395cc(b), the Secretary is only authorized to terminate a provider agreement and Medicare enrollment at a time consistent with the statute governing the effective date for Medicare exclusions under 42 U.S.C. § 1320a-7(c).  Under this statute, the Secretary must give a provider advance notice of the effective date of the exclusion, and the exclusion applies only to services furnished on or after the effective date.  The implementing regulation, 42 C.F.R. § 1001.2002(b), requires the exclusion to go into effect no earlier than 20 days after the Secretary's Office of Inspector gives notice to the provider of the proposed exclusion.

20. In addition to the requirements of prior notice in the Medicare statute and regulation, the due process clause and prohibition against taking private property of the Fifth

Amendment required the Secretary and Novitas to have furnished notice and a meaningful opportunity to be heard prior to imposing the sanctions imposed here.  The Fifth Amendment did not permit the sanctions to be applied retroactively.

21.  When the Secretary or CMS makes an initial determination to terminate a Medicare provider agreement or enrollment in Medicare, such action triggers administrative appeal rights, including a full hearing before an Administrative Law Judge, and eventual judicial review under 42 U.S.C. § 1395cc(h) similar to those available under 42 U.S.C. §§ 405(b) and (g).  Novitas failed to give DCMH notice and access to such appeal rights.  Instead, it offered and provided DCMH only with the opportunity for a written "rebuttal" and nothing more.  And, both the May 21, 2024 and July 1, 2024 decisions were made by a private contractor, Novitas.  The Medicare statutes and regulations, as well as due process of the law, require much more process – especially when the sanctions are imposed retroactively.

## INJUNCTIVE RELIEF IS REQUIRED

22.  Under the circumstances here, where Novitas has already imposed sanctions, injunctive relief, including temporary injunctive relief, is necessary to prevent irreparable harm to DCMH and third parties.  For the reasons stated above, DCMH is likely to prevail on the legal issues raised and discussed above.  The public interest and a balancing of interests require that the Secretary and his contractors abide by the Medicare statutes and regulations as well as the Constitutional provisions at issue.

## MANDAMUS RELIEF IS ALSO REQUIRED

23.  The constitutional provisions, statutes and regulations discussed above impose mandatory requirements on the Secretary and his agents, including MACs.  Where, as here, the Secretary's agent, Novitas, fails to abide by those mandatory requirements, it must be compelled

to do so by the Court.

## **PRAYER**

WHEREFORE, DCMH prays as follows:

1. For an order temporarily and permanently enjoining the Secretary and his agents, including Novitas and other MACs, from imposing the sanctions at issue or otherwise adversely affecting DCMH's Medicare status and billing privileges until further order of the Court;

2. For an order mandating the Secretary to follow the provisions of the Constitution and Medicare laws at issue;

3. For an order setting aside Novitas' May 21, 2024 decision;

4. For costs of suit, including reasonable attorney's fees; and

5. For such other and further relief as the Court deems to be just and appropriate.


Dated: September 5, 2024

        s/Kelly A. Carroll
        Kelly A. Carroll (PA Bar No. 312621)
        David Vernon (DC Bar No. 1030537)
        HOOPER, LUNDY & BOOKMAN, P.C.
        401 9th Street, NW, Suite 550
        Washington, D.C. 20004
        (202) 580-7712
        kcarroll@hooperlundy.com
        dvernon@hooperlundy.com

        Patric Hooper (CA Bar No. 57343)
        HOOPER, LUNDY & BOOKMAN, P.C.
        1875 Century Park East, Suite 1600
        Los Angeles, CA 90067-2517
        (310) 551-8111
        phooper@hooperlundy.com

        *Attorneys for Plaintiff*