## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PROSPECT DCMH LLC d/b/a
DELAWARE COUNTY
MEMORIAL HOSPITAL

<em>Plaintiff,</em>

v.

Civil Action No. 24-cv-04678-PD

XAVIER BECERRA, in his official
capacity as Secretary of the United
States Department of Health and
Human Services,

<em>Defendant.</em>

## DEFENDANT'S COMBINED REPLY IN SUPPORT OF ITS
## MOTION TO DISMISS AND MEMORANDUM IN OPPOSITION TO
## <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

**Table of Contents**

I.    INTRODUCTION ...................................................................................1

II.    ARGUMENT ......................................................................................3

    A. Plaintiff Has Failed to Satisfy the Injury-in-Fact Requirement of
    Article III ..............................................................................................3

        1. The potential for future Medicare overpayments militates
          against standing and federal court jurisdiction. ......................4

        2. Plaintiff's declarant lacks authority to discuss how
          termination might relate to a hypothetical lost sale
          opportunity...............................................................................6

        3.  Plaintiff fails to establish any intangible injury...................8

    B. Plaintiff Fails to Show that its Injury Would Likely be Redressed
    by a Favorable Judicial Decision .......................................................9

    C. Plaintiff Fails to State a Valid Basis for Federal Jurisdiction ........10

    D. Summary Judgment Should be Granted in the Secretary's Favor
    Because Substantial Evidence Shows that Plaintiff Voluntarily
    Terminated its Medicare Provider Agreement....................................10

        1. Plaintiff's use of the Hospital building as an ambulatory
          surgery center and clinic for outpatients is immaterial to its
          termination. .........................................................................13

        2. The "voluntariness" of Plaintiff's termination is irrelevant.
          .............................................................................................15

        3. Novitas was authorized to issue the termination letter........16

        4. The Medicare statute expressly authorizes the Secretary to
          issue regulations concerning termination of an agreement by
          a provider. ...........................................................................18

III.    CONCLUSION ................................................................................19

**TABLE OF AUTHORITIES**                                        **Page(s)**

### Cases

*Albert Einstein Med. Ctr. v. Sebelius*,
   566 F.3d 368 (3d Cir. 2009) ...............................................14

*Ariz. Christian Sch. Tuition Org. v. Winn*,
   563 U.S. 125 (2011) ...........................................................6

*AV2 v. McDonough*,
   2022 WL 1173180 (E.D. Pa. Apr. 20, 2022).....................14

*Bognet v. Sec'y Com. of Pa.*,
   980 F.3d 336 (3d Cir. 2020) ...............................................11

*Chambers v. York County Prison*,
   2021 WL 1212532 n.2 (M.D. Pa. Mar. 31, 2021)...............15

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ...........................................................11

*Dribelbis v. Scholton*,
   274 Fed. App'x 183 (3d Cir. 2008) ...................................7

*Heckler v. Ringer*,
   466 U.S. 602 (1984) ...........................................................8, 9

*Illinois Council v. Shalala*,
   529 U.S. 1 (2000).................................................................9, 20

*Levy-Tatum v. Navient Sols., Inc.*,
   183 F. Supp. 3d 701 (E.D. Pa. 2016)..................................7

*Mercy Home Health v. Leavitt*,
   436 F.3d 370 (3d Cir. 2006) ...............................................14

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) .............................................................17

*Santiago v. Leavitt*,
   2008 WL 4131524 (N.D. Tex. Sept. 3, 2008)  ...................14

*Schweiker v. McClure*,
   456 U.S. 188, (1982) ...........................................................20

*Spokeo v. Robins*,
   578 U.S. 330 (2016) ...........................................................7, 13

*Temple Univ. Hosp., Inc. v. Sec. U.S. Dep't Health & Human Servs.*,
   2 F.4th 121 (3d Cir. 2021) ..................................... 7, 8, 10, 14

*Thole v. U.S. Bank N.A.*,
   590 U.S. 538 (2020).............................................................13

*Trust Under Will of Wills v. Burwell*,
   306 F. Supp. 3d 684 (E.D. Pa. 2018)..................................17

*Tundo v. County of Passaic*,
    923 F.3d 283 (3d Cir. 2019) ...............................................................12
*United States v. Sandini*,
    803 F.2d 123 (3d Cir. 1986) ...............................................................16
*Weinberger v. Salfi*,
    422 U.S. 749 (1975) ..............................................................................9
*Zanecki v. Health Alliance Plan of Detroit*,
    577 F. App'x 394 (6th Cir. 2014)........................................................20

### Statutes

11 U.S.C. §§ 1106-1108 .............................................................................10
42 U.S.C. § 1395cc(b)(1)............................................................................21
42 U.S.C. § 1395cc(b)(3)............................................................................22
42 U.S.C. § 1395ff(b)(1)...............................................................................8
42 U.S.C. § 1395ff(b)-(c)..............................................................................8
42 U.S.C. § 1395k.......................................................................................16
42 U.S.C. § 1395x(e)..................................................................................16
42 U.S.C. §§ 1302(a)..................................................................................22

### Rules

Fed. R. Evid. 103(a)(1)(B).........................................................................15

### Regulations

42 C.F.R. § 405.924(b) .................................................................................8
42 C.F.R. § 421.5(b) ...................................................................................21
42 C.F.R. § 482.11(b)-(c).............................................................................13

## I.    <u>INTRODUCTION</u>

The Hospital has been closed for over two years.  It has no doctors or in-patients.  Its entrance is barricaded, its shades are drawn, and its "Emergency" room sign is covered by a tarp.  Plaintiff's website reports that the Hospital is closed.  The Hospital's state license has been revoked.  The Hospital has no plan to reopen.  Why is a permanently shuttered hospital concerned about its termination from the Medicare program?  Plaintiff fails to answer that basic question.  Plaintiff has no concrete stake in obtaining a favorable ruling, because it has no interest in billing Medicare in the future.

Lacking any prospective interest in billing Medicare, Plaintiff nonetheless disputes the retroactive date of its termination.  But the Complaint fails to identify any injury caused by the date of termination.  Plaintiff's *sole* assertion of a tangible injury is found in a single sentence in its supporting declaration, which vaguely asserts a potential of future Medicare overpayments and the possibility that the termination could affect future efforts to sell the Hospital.  Dkt. No. 14-2 ("P. Decl.") ¶ 13.  It is undisputed, however, that any grievance regarding termination as it relates to payment for specific Medicare claims must be channeled through the administrative appeals process.  *See* Dkt. No. 12 ("D. Br.") at 13 n.3.  Accordingly, any potential intertwining between Plaintiff's termination and Medicare overpayments cannot support standing and militates strongly in favor of the

1

dismissal of this matter.

Meanwhile, Plaintiff omits the fact that it has filed chapter 11 bankruptcy and that its declarant, the CEO of the Hospital, now lacks authority to discuss future sale efforts. *See In re: Prospect Med. Holdings, Inc.*, No. 25-80002 (Bankr. N.D. Tex.). The declarant's statement regarding sale efforts should thus be disregarded. If not, the Court should take note of the declaration of debtors' Chief Restructuring Officer, who did not identify any prospective purchaser of the Hospital, much less any issue that the retroactive termination date might pose to a potential sale. *See id.*, Dkt. No. 41 at 29-30 (D. Ex. 20).

In sum, Plaintiff fails to identify any tangible injury that could support federal jurisdiction. Plaintiff also concedes that it has no intangible interest in its Medicare enrollment. Not only has Plaintiff failed to show any concrete injury, it also makes no attempt to show that a later date of termination would redress that injury.

Finally, even if Plaintiff established standing, it has not shown that CMS's determination was unsupported by substantial evidence. It is undisputed that, as of the November 7, 2022 termination date, Plaintiff's building no longer met the statutory definition of a Medicare "hospital" and no longer provided any hospital-level services. Even if Plaintiff provided some limited outpatient services, that would be insufficient to show that the Secretary's finding was erroneous. Accordingly, the Complaint should be dismissed for lack of standing, or,

2

alternatively, summary judgment should be granted in the Secretary's favor.

## II.    <u>ARGUMENT</u>

### A.    **Plaintiff Has Failed to Satisfy the Injury-in-Fact Requirement of Article III**

The threshold question before the Court is not whether the termination of Plaintiff's Medicare provider agreement was erroneous, but rather whether Plaintiff has established standing. *See Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011) ("To state a case or controversy under Article III, a plaintiff must establish standing." ).  Under well-settled Supreme Court law, a statutory violation that is "divorced from any concrete harm" fails to "satisfy the injury-in-fact requirement of Article III."  *See* D. Br. at 20 (quoting *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)).  Although the Complaint fails to allege any injury, one sentence in Plaintiff's declaration asserts a tangible future injury in the form of potential overpayments and a hypothetical lost sale opportunity.  P. Decl. ¶ 13.  As discussed below, however, neither can suffice for Article III standing.  Meanwhile, Plaintiff fails to respond to the Secretary's argument that it has no property interest or "right" to participate in Medicare, and thus concedes the absence of an intangible injury. *See*  D. Br. at 17-20; *Dribelbis v. Scholton*, 274 Fed. App'x 183, 185 (3d Cir. 2008) (affirming district court's finding of waiver as to an argument where plaintiff had opportunity to address it in his opposition brief but failed to do so); *Levy-Tatum v. Navient Sols., Inc.*, 183 F. Supp. 3d 701, 712 (E.D. Pa. 2016) (collecting cases).

###### 1.    The potential for future Medicare overpayments militates against standing and federal court jurisdiction.

Plaintiff asserts that this case is an exception to the "near-absolute bar to federal-question jurisdiction for claims arising under the Medicare Act." *Temple Univ. Hosp., Inc. v. Sec. U.S. Dep't Health & Human Servs.*, 2 F.4th 121, 128 (3d Cir. 2021); P. Br. at 11-12.  The Third Circuit notes that the "lone exception is quite narrow" and requires a "*complete* preclusion of judicial review."  *Id.* (emphasis in original).  Although a voluntary termination is not an "initial determination" subject to administrative appeal rights (see D. Br. at 4-5), Plaintiff asserts that the "retroactive decision will cause Medicare to disallow millions of dollars in previous Medicare repayments to" the Hospital.  P. Br. at 11.  Assuming Plaintiff is correct, it will have the opportunity to administratively appeal the termination in connection with any "initial determination" of Medicare overpayments.  The Medicare statute thus bars federal court jurisdiction to the extent Plaintiff's termination relates to a future overpayment.  *Temple*, 2 F.4th at 124 ("[T]he Medicare Act channels reimbursement disputes through administrative adjudication as a near-absolute prerequisite to judicial review.").

Under the Medicare statute, jurisdiction for judicial review of overpayments is contingent upon a final decision of the Secretary, which requires both presentment of a claim and exhaustion of administrative remedies.  42 U.S.C. § 1395ff(b)(1) (incorporating 42 U.S.C. § 405(g)); *Heckler v. Ringer*, 466 U.S. 602, 617 (1984).

4

The *Ringer* Court held that Section 405(h) foreclosed Section 1331 jurisdiction when the allegedly collateral claims were "inextricably intertwined" with the underlying claim for benefits. *Ringer*, 466 U.S. at 613-15. To exhaust administrative remedies in the claims appeals process, a plaintiff must complete all four levels of administrative review, including reconsideration, redetermination, an ALJ hearing, and review by the Medicare Appeals Council. *See* 42 U.S.C. § 1395ff(b)-(c); 42 C.F.R. § 405.924(b).

In *Illinois Council v. Shalala*, the Supreme Court noted that where a suit challenges the denial of Medicare reimbursement, the Medicare statute "plainly bars § 1331 review . . . irrespective of whether the individual challenges the agency's denial on evidentiary, rule-related, statutory, constitutional or other legal grounds." 529 U.S. 1, 10 (2000). The Court refused to "accept a distinction that limits the scope of § 405(h) to claims for monetary benefits." *Id.* at 14. "All aspects" of a grievance must be channeled through the administrative process, *id.* at 12, even though it may mean a postponement of review of some legal claims in some instances, *id.* at 20. The Court concluded that "§ 405(h), as incorporated by § 1395ii, bars federal-question jurisdiction," and requires providers to "proceed instead through the special review channel" of the Medicare statute, including exhaustion of administrative remedies. *Id.* at 5; *accord Ringer*, 466 U.S. at 614.

If a future overpayment determination relates to Plaintiff's termination,

Plaintiff will have an opportunity to be heard during the administrative appeal process. Plaintiff cannot short-circuit the statutory presentment and exhaustion requirements by using a possible favorable ruling by this Court to "prematurely interfere[]" with an overpayment determination. *Illinois Council*, 529 U.S. at 13; *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975) (the exhaustion requirement prevents "premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review."); *see, e.g.*, *Temple Univ. Hosp.*, 2 F.4th at 131 (holding that a hospital must channel its channel its Medicare reimbursement dispute through the administrative appeals process before seeking judicial review); P. Br. at 11 (asserting that the "retroactive decision will cause Medicare to disallow millions of dollars in previous Medicare payments to DCMH"). Accordingly, the mere "postponement of judicial review" of Plaintiff's termination as it relates to a future Medicare overpayment "does not suffice" for the narrow exception to federal question jurisdiction. *Temple Univ.*, 2 F.4th at 128.

### 2. Plaintiff's declarant lacks authority to discuss how termination might relate to a hypothetical lost sale opportunity.

Plaintiff's declarant, the CEO of the Hospital, asserts that the retroactive termination "may" result in the Hospital being unable to proceed with efforts to

6

sell to a non-profit organization.  P. Decl ¶ 13.[1]  This statement should be

disregarded in light of Plaintiff's chapter 11 bankruptcy filing.  The Hospital's

CEO lacks authority to describe the impact of the retroactive termination on a

hypothetical sale process that will now be conducted in the debtors' bankruptcy.

*See generally* 11 U.S.C. §§ 1106-1108 (authorizing the debtor-in-possession and

trustee to operate the debtor's business).  In contrast, debtors' Chief Restructuring

Officer, who is authorized to discuss the sale process in bankruptcy, describes two

past sale opportunities that did not work out for reasons unrelated to the retroactive

termination.  D. Ex. 20 at ¶ 73.  The Chief Restructuring Officer does not identify

any prospective buyers of the Hospital, but rather states that "Prospect is

continuing to market its Pennsylvania entities."  *Id.* at ¶ 74.  It is thus undisputed

that there is no actual or "impending" injury in relation to a potential sale of the

Hospital.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (an "injury

must be certainly impending to constitute injury in fact" and "allegations of

possible future injury are not sufficient").

　　　　Even if Plaintiff's CEO were authorized to speak on this issue, his

declaration is too vague to support a concrete injury.  The declarant fails to identify

what stage the parties are in negotiations (to the extent there are any negotiations),

---

[1] Plaintiff's brief overstates the declaration by asserting that the Hospital
"*will* [] be unable to proceed with a sale of the hospital to a non-profit
organization."  P. Br. at 10 (emphasis added).

why the retroactive termination would frustrate the sale, or why a later termination date would allow the sale to move forward. P. Decl ¶ 13. The hypothetical possibility that a third-party buyer might not purchase the Hospital due to the retroactive termination cannot suffice for standing. *See Bognet v. Sec'y Com. of Pa.*, 980 F.3d 336, 348 (3d Cir. 2020) ("[I]f the injury that you claim . . . depends on a harm that may never happen, then you lack an injury for which you may seek relief from a federal court.").

### 3.    Plaintiff fails to establish any intangible injury.

In the absence of a tangible injury, Plaintiff must show an intangible injury to meet the standing requirement. The Secretary cited multiple circuit-level decisions holding that providers have no property interest in their participation in the Medicare program. D. Br. at 17-20. Plaintiff offers no response, and this issue has thus been conceded. Absent a property interest, Plaintiff's assertion of a denial of due process and objection to Novitas' role as a Medicare Administrative Contractor are "irrelevant." *Tundo v. County of Passaic*, 923 F.3d 283, 289 (3d Cir. 2019) ("A plaintiff first has to show a protected interest before he can dispute the government's power to deny it.").[2]

---

[2] Even if Plaintiff had identified a property interest, the Secretary's brief explained that there is no need for a pre-deprivation hearing in the case of a *voluntary* termination. D. Br. at 19-20.

Even if a statutory violation occurred, Plaintiff does not address whether that would constitute a cognizable injury under Article III.  D. Br. at 20-21.  Indeed, Plaintiff makes no attempt to show that Congress has found that any purported statutory violation constitutes an injury sufficient to satisfy Article III, much less that the injury has "long been seen as injurious" under the common law.  *Id.* (citing Supreme Court and Third Circuit cases).  Accordingly, Plaintiff's various procedural arguments concerning the issuance of the termination fail for lack of standing.  *See* P. Br. at 16-25.

**B.      Plaintiff Fails to Show that its Injury Would Likely be Redressed by a Favorable Judicial Decision**

Even if Plaintiff established an injury-in-fact, which it plainly has not, it makes no attempt to show that its injury is likely to be redressed by a favorable judicial decision.  *Spokeo*, 578 U.S. at 338.  If Plaintiff wins and the termination is vacated, Plaintiff would still lack any intention of reentering the Medicare program and beginning hospital operations.  Indeed, Plaintiff has no legal ability to operate as a hospital without a state license and without any licensed personnel.  42 C.F.R. § 482.11(b)-(c).  Nor does Plaintiff have any stake in the retroactive date of its termination.  Plaintiff does not allege that a later termination date would facilitate a sale of the Hospital.  Accordingly, this case is similar to the Supreme Court's decision in *Thole v. U.S. Bank N.A.*, in which the outcome of the case had no effect on the plaintiffs' monthly benefit payments.  590 U.S. 538, 541 (2020).  Likewise,

because Plaintiff has "no concrete stake in the lawsuit," it lacks Article III

standing. *Id.*

### C.    Plaintiff Fails to State a Valid Basis for Federal Jurisdiction

As discussed above, Plaintiff cannot establish federal question jurisdiction

because this case is intertwined with a future overpayment determination.  Plaintiff

next asserts jurisdiction under the Mandamus Act, but the Third Circuit case it

cites denied mandamus jurisdiction where the litigant had an "adequate alternative

remedy through administrative appeal" under the Medicare Act.  *See* P. Br. at 14;

*Temple Univ.*, 2 F. 4th at 132.  Because Plaintiff will have the opportunity to

challenge its termination in conjunction with an overpayment appeal, an adequate

alternative remedy exists.  In any event, Plaintiff concedes that Mandamus Act is

not a waiver of sovereign immunity and is thus inadequate on its own to establish

jurisdiction.  *See* D. Br. at 24; *see also AV2 v. McDonough*, 2022 WL 1173180, at

*7 (E.D. Pa. Apr. 20, 2022) ("Neither the general federal question nor the

mandamus statute . . . waives sovereign immunity.").  Accordingly, this case

should be dismissed for lack of jurisdiction.

### D.    Summary Judgment Should be Granted in the Secretary's Favor Because Substantial Evidence Shows that Plaintiff Voluntarily Terminated its Medicare Provider Agreement

Assuming that standing and jurisdiction exist, the Court may consider

Plaintiff's challenge to its termination under the Administrative Procedure Act.

Agency action may be set aside "only if it is 'unsupported by substantial evidence,'

is 'arbitrary, capricious, an abuse of discretion, or [is] otherwise not in accordance

with law.'"  *Mercy Home Health v. Leavitt*, 436 F.3d 370, 377 (3d Cir. 2006)

(alteration in original) (quoting 5 U.S.C. § 706(2)(A), (E)).  Factual findings are

upheld as long as they are supported by substantial evidence, which requires "more

than a mere scintilla," and "means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion."  *Albert Einstein Med. Ctr. v.

Sebelius*, 566 F.3d 368, 372 (3d Cir. 2009) (citation omitted).

　　Plaintiff fails to show a lack of evidence supporting CMS's (i) determination

that the Hospital voluntarily terminated it under section 489.52(b)(3) due to its

"cessation of business"; or (ii) issuance of a date of termination of November 7,

2022.  As to the first issue, it is undisputed that the Hospital's entrance is shuttered,

Plaintiff's website reports that the Hospital is closed, and that the Hospital's

license has been revoked.  *See* D. Exs. 1, 7, 8.  Although Plaintiff alleges that it

provided various outpatient services after November 2022, it does not assert that

any medical services were being performed when CMS issued the termination

letter in May 2024.  P. Decl. ¶ 12; P. Ex. A.  Accordingly, the Secretary's

determination that the Hospital voluntarily terminated by ceasing to provide

services to the community is amply supported and uncontroverted.

The Secretary has also proffered a wealth of undisputed evidence in support
of the retroactive termination date of November 7, 2022.  At that time, the Hospital
had filed a WARN notice advising of an impending "closure," had no physicians
or staff to provide care to in-patients, had no inpatients, and opposed having any
in-patients in the future.  *See* D. Br. at 5-10, 13 (citing exhibits).[3]  Since the
Hospital ceased to be primarily engaged in providing in-patient care under the
supervision of physicians, it no longer met the statutory definition of a "hospital"
under Medicare law.  *See* 42 U.S.C. § 1395x(e).  Plaintiff fails to offer any reason
why a building that ceases to meet the statutory elements of a hospital should be
permitted to continue billing Medicare as a hospital.  Instead, section 489.52(b)(3)
protects the Medicare program where there has been a "cessation of business" by
imposing a termination "effective with the date on which [the provider] stopped
providing services to the community."  *Id.*[4]

---

[3] Plaintiff asserts that Defendants' exhibits may be problematic (P. Br. at
10), but does not lodge an objection to any specific exhibit for any particular
reason.  Accordingly, any objection should be deemed waived or overruled, and
Defendants' exhibits should be admitted.  *See* Fed. R. Evid. 103(a)(1)(B); *see, e.g.*,
*Chambers v. York County Prison*, 2021 WL 1212532, at *1 n.2 (M.D. Pa. Mar. 31,
2021) ("'General objections, such as characterizing the evidence as [hearsay], will
not suffice' to raise a proper evidentiary objection.") (quoting *United States v.
Sandini*, 803 F.2d 123, 126 (3d Cir. 1986)).

[4] Along the same lines, section 454.540(a)(7) authorizes CMS to deactivate a
provider's billing privileges that is "voluntarily withdrawing from Medicare."  *Id.*

### 1. Plaintiff's use of the Hospital building as an ambulatory surgery center and clinic for outpatients is immaterial to its termination.

Plaintiff asserts that there was not a cessation of business because it used the hospital building as a makeshift medical office to perform various outpatient services and procedures. P. Decl. ¶ 12. The Hospital, however, was enrolled as a "provider" under Part A of the Medicare program (D. Br. at 3-4), while the outpatient services Plaintiff describes are performed by "suppliers" under Part B of the Medicare program. *See* 42 U.S.C. § 1395k (scope of benefits of Part B). Because it is undisputed that Plaintiff ceased to offer hospital-level services to the community on or before November 7, 2022, Plaintiff's offering of various elective outpatient services by appointment to a limited number of patients is irrelevant. Once members of the general public needing emergency and in-patient care were turned away, Plaintiff no longer offered services to the community and was eligible for termination. Indeed, Plaintiff concedes this Court's finding that a low ratio of in-patients makes a facility "much less likely to qualify as a hospital." D. Br. at 14-15 (citing *Trust Under Will of Wills v. Burwell*, 306 F. Supp. 3d 684, 695-96 (E.D. Pa. 2018)).

Even if providing outpatient services were relevant to the validity of a hospital's termination under section 498.52(b)(3), Plaintiff's declaration provides no concrete information or data concerning the outpatient services allegedly

13

performed in early November 2022.  P. Decl. ¶ 12.  Plaintiff instead vaguely

asserts that outpatient services "continued" after November 2022.  *Id.*  In sum, the

Secretary has proffered far more than a "mere scintilla" of evidence showing that

the Hospital ceased providing services to the community as of November 7, 2022,

and Plaintiff's modicum of evidence to the contrary is insufficient to overturn

CMS's determination.  *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto.*

*Ins. Co.*, 463 U.S. 29, 43 (1983) ("the scope of review under the [APA] is narrow

and a court is not to substitute its judgment for that of the agency").

　　Although this issue has been rarely litigated, the Secretary cited several

analogous cases upholding a hospital's voluntary termination.  *See* D. Br. at 15-16.

Plaintiff's attempt to distinguish these cases misses the mark.  P. Br. at 21.  The

*Santiago* court held that the plaintiff lacked standing to challenge a voluntary

termination not because of his ownership status (as Plaintiff suggests), but because

he "dismissed [the facility's] patients."  2008 WL 4131524, at *5.  While Plaintiff

correctly notes that *Center City Healthcare* did not involve a standing question, it

indisputably involved the *identical* issue presented here on the merits—whether the

Secretary erred by terminating a hospital under section 489.52(b)(3) that had no in-

patients but that offered various ancillary services.  D. Br. at 15-16.  The court's

finding that such ancillary services did not show that the hospital continued

providing services to the community is highly instructive and precisely on-point.

*Id.* Meanwhile, Plaintiff fails to cite any decision overturning a finding of a voluntary termination, much less one finding that a hospital without doctors or in-patients could avoid termination under section 489.52(b)(3).

Finally, Plaintiff's equitable complaints about the retroactivity of its termination ring hollow. After the Hospital closed to in-patients, Plaintiff could have provided notice to CMS of its termination under section 489.52(a) and applied for enrollment in Medicare Part B to offer outpatient services. Plaintiff chose not to. Instead, Plaintiff elected, at its own risk and for reasons unknown, to bill outpatient services under its Medicare provider agreement as if the Hospital were fully operational. Plaintiff does not allege that it, at any time after November 2022, informed CMS that it no longer offered in-patient services. Accordingly, if the equities were relevant here, public policy would strongly favor CMS's ability to ensure that hospitals enrolled in Medicare continue to provide services required by that program. *See* D. Br. at 19-20 (citing cases).

## 2.    The "voluntariness" of Plaintiff's termination is irrelevant.

Plaintiff's assertion that its termination was not "voluntary" due to actions taken by the Pennsylvania Department of Health, even if true, is irrelevant. P. Br. at 20-21. The terms "voluntary" and "voluntary termination" do not appear in section 489.52 ("Termination by the provider"); rather, these are colloquial terms used to distinguish terminations under section 489.52 from what are commonly

called "involuntary" terminations under sections 489.53 ("Termination by CMS")

and 489.54 ("Termination by the OIG").  Since the terms "voluntary" and

"involuntary" are not in these regulations, their colloquial use and Plaintiff's

understanding of their meaning are irrelevant.  In any event, section 489.52(b)(3)

makes no exception for a provider that ceased doing business because of some

action taken by a state regulator.

Furthermore, it is undisputed that the Hospital opposed an injunction to keep

its emergency room open, and that the Pennsylvania Department of Health banned

in-patient admissions only after the Hospital failed to offer diagnostic imaging for

the emergency department and presented a significant threat to patient health and

safety.  *See* D. Br. at 7-9.  The Pennsylvania Department of Health's action was

simply the natural consequence of the Hospital's plan to dismantle its medical

units, fire its employees, and eventually shut down.  *Id.* at 6-7.

### 3.    Novitas was authorized to issue the termination letter.

Although Plaintiff asserts that Novitas overstepped its role as a Medicare

Administrative Contractor, it ignores the fact that the termination letters appear on

*dual* CMS and Novitas letterhead.  *See* D. Br. at 17.  Indeed, the following logo

appears on the upper-left-hand corner of the letters:



**MEDICARE**

*See* Compl., Exs. A, C.  Plaintiff does not dispute that the issuance of these letters was consistent with Novitas' statutory authority to communicate with providers and perform program integrity functions.  D. Br. at 17 (citing 42 U.S.C. § 1395kk-1(a)(4)(E), (H)); *see also Schweiker v. McClure*, 456 U.S. 188, 190, (1982) (noting that "carriers act as the Secretary's agents"); *Zanecki v. Health Alliance Plan of Detroit*, 577 F. App'x 394, 398 (6th Cir. 2014) ("The Medicare regulations for Parts A and B specifically provide that [Medicare Administrative Contractors] 'act on behalf of CMS in carrying out certain administrative responsibilities that the law imposes.'") (citing 42 C.F.R. § 421.5(b)).

Plaintiff's cited cases are inapposite, because they concerned actions taken by a Medicare Administrative Contractor that the *Secretary* was not authorized to perform.  *See* P. Br. at 16-17.  Here, on the other hand, there is no dispute that the Secretary would have been authorized to terminate Plaintiff's billing privileges. Plaintiff cites no authority for its hypothesis that the Secretary is somehow barred from using a Medicare Administrative Contractor to communicate a decision to terminate billing privileges.

### 4.    The Medicare statute expressly authorizes the Secretary to issue regulations concerning termination of an agreement by a provider.

Plaintiff's assertion that the regulation under which it was terminated (section 489.52) lacks a statutory basis is belied by the plain text of the statute that Plaintiff cites. P. Br. at 19-20. 42 U.S.C. § 1395cc(b)(1) expressly authorizes the Secretary to implement regulations applicable to voluntary terminations, stating:

> A provider of services may terminate an agreement with the Secretary under this section at such time and upon such notice to the Secretary and the public *as may be provided in regulations*, except that notice of more than six months shall not be required.

*Id.* (emphasis added). In turn, section 489.52 discusses the process by which providers terminate Medicare agreements, including by a cessation of business. Given that the statute confers broad authority upon the Secretary to craft regulations regarding termination of Medicare agreements by providers, and that Plaintiff identifies no conflict between sections 1395cc(b)(1) and 489.52, the Secretary surely did not exceed his authority.[5]

Finally, Plaintiff's citation to section 1395cc(b)(3) is misplaced, because that provision applies to involuntary terminations by CMS, which are not at issue here. *See* 42 U.S.C. § 1395cc(b)(3) ("A termination of an agreement or a refusal to renew an agreement under this subsection . . . .); P. Br. at 22-23.

---

[5] The issuance of section 489.52 also falls under the Secretary's general authority to prescribe regulations under 42 U.S.C. §§ 1302(a) and 1395hh(a).

III.    **CONCLUSION**

For the foregoing reasons, the Secretary respectfully requests that the Court grant his motion to dismiss for lack of subject-matter jurisdiction and dismiss the Complaint with prejudice.

Date: February 5, 2025

Respectfully submitted,

JACQUELINE C. ROMERO

United States Attorney

/s/ Gregory B. David
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

*/s/ Eric S. Wolfish*
ERIC S. WOLFISH
Special Assistant United States Attorney
Eric.Wolfish@hhs.gov
(215) 861-4511

*Counsel for Defendant*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I caused a true and correct copy of the

foregoing to be served on all counsel of record via the Court's CM/ECF system.


<u>*/s/ Eric S. Wolfish*      </u>
Eric S. Wolfish

*Counsel for Defendant*